UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
BORIS MINEVICH,                                )
                                               )
            Plaintiff,                         )    Civ.
                                               )
    v.                                         )
                                               )
                                               )
THE MOTION PICTURE INDUSTRY PENSION            )
& HEALTH PLANS, CHUCK GORDON,                  )
ARLENE WITHERS, and TED FRIESEN,               )
                                               )
            Defendants.                        )
------------------------------------------------------------x

## COMPLAINT

1.  Plaintiff, Boris Minevich, by and through his counsel of record, Giskan Solotaroff Anderson & Stewart LLP, alleges the following upon information and belief, against defendants The Motion Picture Industry Pension & Health Plans (sometimes referred to herein as the "Plans"), Chuck Gordon, Arlene Withers, and Ted Friesen.

## NATURE OF THE ACTION

2.  Mr. Minevich has brought this lawsuit against The Motion Picture Industry Pension & Health Plans and its management for discriminatory discharge in violation of whistle blower protections provided by § 510 of the Employment Retirement and Income Security Act ("ERISA"), 29 U.S.C. §§ 1001-1169. Mr. Minevich also asserts a claim for breach of fiduciary duty against the individual defendants Chuck Gordon, Arlene Withers, and Ted Friesen under ERISA § 404(A)(1).

3.  From approximately August 2007 through February 2008, Mr. Minevich was employed as an auditor for The Motion Picture Industry Pension & Health Plans in the New York

office. On January 22, 2008, Mr. Minevich alerted the Chief Legal Officer, Arlene Withers, in a written report to a series of financial discrepancies within the Auditing Department which had resulted in a chronic under funding of the Plan over a number of years. In late January 2008, an investigation of the Auditing Department and the under funding of the Plan was commenced in response to Mr. Minevich's report. On February 5, 2008, Mr. Minevich's supervisor contacted him in order to obtain additional information about the financial abuses in Mr. Minevich's report in connection with the ongoing investigation. Mr. Minevich complied and provided the requested information. On February 7, 2008, Mr. Minevich was terminated as a result of his whistle blowing activities.

## JURISDICTION AND VENUE

4. This action is brought under § 510 of ERISA, 29 U.S.C. § 1132, for injunctive and other equitable relief. This Court has subject matter jurisdiction over the claims of plaintiff pursuant to 29 U.S.C. §1001 *et seq.* and 28 U.S.C. § 1331.

5. Venue is appropriate because the acts alleged in this Complaint were carried out, in large part, within this District, and defendant transacts interstate commerce in this District.

## THE PARTIES

6. Plaintiff Boris Minevich is a resident of the Bronx, New York. From August 2007 through February 2008, Mr. Minevich was employed by The Motion Picture Industry Pension and Health Plans as an auditor in the New York offices. Mr. Minevich was also a member of the Plans and entitled to its benefits.

7. Defendant The Motion Picture Industry Pension and Health Plans is headquartered at 11365 Ventura Boulevard, Studio City, California 91614-0999 and also

maintains offices at 145 Hudson Street, Suite 6A, New York, New York 10013-2103. The Motion Picture Industry Pension and Health Plans is comprised of trust funds established by collective bargaining agreements between many of the unions and employers in the motion picture production industry and provides pension and health benefits to workers in the motion picture industry.

8. Defendant Chuck Gordon is the Manager of the Auditing Department of The Motion Picture Industry Pension and Health Plans.

9. Defendant Arlene Withers is the Chief Legal Officer of The Motion Picture Industry Pension and Health Plans.

10. Defendant Ted Friesen is the Chief Financial Officer of The Motion Picture Industry Pension and Health Plans.

## ALLEGATIONS OF FACT

11. The Motion Picture Industry Pension and Health Plans provide pension and health care benefits to workers in the motion picture industry. The Plans are primarily supported by employer contributions. Contributions to the Plans are received from employers engaged in the production of motion pictures or engaged primarily in the business of furnishing materials or services for motion picture productions, and which have entered into a collective bargaining agreement(s) with one or more participating unions.

12. Many of the employers engaged in the motion picture industry are short lived companies created solely for the duration of a single motion picture production. Once the motion picture production has been completed, the companies involved in its production routinely go out of business. For this reason, it is extremely important for the contributions to the Plans to be

collected promptly from the employers engaged in the production of the motion picture while the corporate entities are still in existence. Prior to any collection efforts, any audit must be "published" or sent to the employer.

13. In August 2007, Mr. Minevich was hired by The Motion Picture Industry Pension and Health Plans as an auditor in the New York offices. Prior to becoming employed by The Motion Picture Industry Pension and Health Plans, Mr. Minevich worked as an auditor in a similar capacity for five years. Mr. Minevich was responsible for, *inter alia*, auditing the payroll of the companies which employed workers in the motion production industry to ensure that the hours worked by the employees were properly recorded, paid and credited towards their pension and health benefits.

14. In September 2007, Mr. Minevich attended training sessions in the Studio City, California headquarters. During the training sessions, several senior auditors told Mr. Minevich that the audits routinely do not get published for many months, and sometimes years, for no apparent reason. The practice of delaying audit publication without reason struck Mr. Minevich as odd, especially given the ephemeral nature of the corporate entities that employed workers in the motion picture industry.

15. Shortly thereafter, in or around October 2007, Mr. Minevich completed a small findings audit of approximately $700. Mr. Minevich submitted the findings to the corporate employer, who agreed with his findings. The employer requested that Mr. Minevich send the bill as soon as possible because the company was going out of business.

16. Rather than publishing the audit promptly to enable the Plans to collect contributions due to the members, the Assistant Manager of the Auditing Department, William Ubillus, delayed publication. Mr. Minevich complained to the Manager of the Auditing Department, Chuck Gordon,

that audit had not been published. Mr. Gordon, however, likewise failed to publish the audit. Two months later, the audit still had not been published.

17.  From November 2007 through early January, 2008, Mr. Minevich discovered that many audits were not being published for many years. Mr. Minevich became very concerned that by not publishing the audits as soon as they were completed was a violation of the auditors' fiduciary obligations to the members of the Plans. If the audits were published on time, and the outstanding balances were collected from the employers, the members of the Plans would be properly credited with the full pension and health benefits to which they are entitled. However, by failing to publish the audits in a timely manner, many of the contributions to the Plans cannot be collected because the corporate employers go out of business upon the completion of the motion picture production. As a result of the failure of The Motion Picture Industry Pension and Health Plans to timely publish audits and collect dues from employers, many of the Plans' members' benefits are permanently lost.

18.  On January 22, 2008, Mr. Minevich provided a letter report to Arlene Withers, Chief Legal Officer of The Motion Picture Industry Pension and Health Plans, alerting her to the financial improprieties within the Auditing Department, namely, the historical and ongoing failure to publish audits timely and collect contributions from employers. These financial improprieties had resulted in, and continued to cause, the under funding of the Plans.

19.  In his letter report to Ms. Withers, Mr. Minevich indicated, *inter alia*, the following improprieties which were having detrimental effects on the Plans and the members of the Plans:

a. Audits at The Motion Picture Industry Pension and Health Plans are not published for months after completion, and in some instances, are not published for three years after completion. At his last job as an auditor, Mr. Minevich indicated that the average time between

audit completion and publication of the report was two to three weeks (and sometimes as promptly as two days) and that collections were at 90%.

  b. As a result of the delayed publication of audit reports, collections at The Motion Picture Industry Pension and Health Plans had suffered. It went without saying that the earlier collections could be commenced following publication of the audit report, the easier it was to collect contributions from employers and the higher the rate of collections.

  c. As a result of the delayed publications of audit reports, members of the Plans had suffered. Benefits hours were not being reflected accurately and might be less than the actual hours worked. As a result, members who may have worked the requisite hours to be eligible for pension and/or health benefits may not be receiving them.

  d. Audits of employer payrolls were not performed in a timely manner. This was especially problematic given the nature of the movie industry where production companies are created to make a particular film and then close down after the film is released. Some audits, however, did not occur until five years after the close of a production when companies may no longer exist and access to payroll records is compromised.

  20. After reading Mr. Minevich's report, Ms. Withers met with Mr. Minevich in the New York offices. Ms. Withers told Mr. Minevich that she already was aware of the issues he had identified. She said she would take care of these issues once she was back in California and asked Mr. Minevich for permission to release his report. Mr. Minevich consented to the release.

  21. On February 4, 2008, Mr. Minevich's supervisor, Laja Yusuf, received a telephone call from Ted Friesen, the Chief Financial Officer of The Motion Picture Industry Pension and Health Plans, and Chuck Gordon, the Manager of the Auditing Department. The phone call lasted

approximately one hour.

22. On February 5, 2008, Mr. Minevich's supervisor, Laja Yusuf, called Mr. Minevich into his office. At first, Mr. Yusuf attempted to give Mr. Minevich a performance review, but had little to offer in terms of an evaluation, other than to state that Mr. Minevich was not a "team player." Mr. Yusuf then asked for more information about Mr. Minevich's letter report to Ms. Withers, including Mr. Minevich's source. In response to his supervisor's inquiry, Mr. Minevich showed Mr. Yusuf a copy of an email from an outside source upon which some of Mr. Minevich's report was based. Mr. Minevich also indicated that he had other sources within The Motion Picture Industry Pension and Health Plans. Mr. Yusuf accused Mr. Minevich of trying to destroy the company with the allegations of financial improprieties set forth in his report to Ms. Withers.

23. During the February 5, 2008 meeting with his supervisor, Mr. Minevich was asked by his supervisor whether he was happy with his employment with The Motion Picture Industry Pension and Health Plans. Mr. Minevich responded "no" and referenced, as a basis for his professional dissatisfaction, the financial improprieties in the Auditing Department which he had identified in his letter report to Ms. Withers. Mr. Minevich's supervisor then stated that since Mr. Minevich was not happy with his employment, his employment would be terminated. The supervisor said that Mr. Minevich could leave on his own or he would be fired. Mr. Minevich said that he did not want to leave until he found another job.

24. On February 6, 2008, Mr. Minevich felt ill and went to his doctor. Mr. Minevich did not report to work as a result of feeling ill.

25. On February 6, 2008, Mr. Minevich wrote to government agencies overseeing retirement benefit plans and informed them of the financial improprieties he had uncovered in the

Auditing Department at The Motion Picture Industry Pension and Health Plans.

26. On February 7, 2008, Mr. Minevich reported to work. He learned that suddenly three year old audits were being published.

27. Around noon on February 7, 2008, Mr. Minevich was called into his supervisor's office. Chuck Gordon, the Manager of the Auditing Department, was on the telephone. Mr. Minevich was informed by Mr. Gordon and his supervisor that his employment with The Motion Picture Industry Pension and Health Plans had been terminated.

28. Mr. Minevich was terminated because he alerted The Motion Picture Industry Pension and Health Plans to financial improprieties in the Auditing Department which were causing damage to the Plans and the members of the Plans. Since his termination of employment with The Motion Picture Industry Pension and Health Plans, Mr. Minevich has looked for, but has not found, comparable employment.

## COUNT I

## DISCRIMINATORY DISCHARGE IN VIOLATION OF ERISA § 510

29. Mr. Minevich repeats and realleges each and every allegation contained in the paragraphs above with the same force and effect as if fully set forth herein.

30. Section 510 of the Employment Retirement and Income Security Act ("ERISA"), codified at 29 U.S.C. §§ 1140, provides protections to whistle blowers concerning possible illegal activities involving benefit plans and provides in relevant part:

> It shall be unlawful for any person to discharge, fine, suspend, expel, or discriminate against any person because he has given information or has testified or is about to testify in any inquiry or proceeding relating to this chapter. . .

31. By terminating Mr. Minevich in retaliation for providing information in an inquiry involving the under funding of the Plans and the auditing improprieties, The Motion Picture Industry Pension and Health Plans violated Section 510 of ERISA.

## COUNT II

## BREACH OF FIDUCIARY DUTY IN VIOLATION OF ERISA § 404(A)(1)

32. Mr. Minevich repeats and realleges each and every allegation contained in the paragraphs above with the same force and effect as if fully set forth herein.

33. Defendants Gordon, Withers and Friesen were fiduciaries within the meaning of that term in ERISA §3(21)(A); 29 U.S.C. § 1003 (21)(A), exercising discretionary authority, control and responsibility over the management and administration of ERISA-governed Plans. At all relevant times, the fiduciary defendants jointly exercised full discretion and authority to ensure that the Plans were properly managed in the best interest of the beneficiaries, including, *inter alia*, assuring that the audits were timely published and employer contributions were promptly collected.

34. Defendants Gordon, Withers and Friesen were aware at all relevant times of the financial improprieties in the Auditing Department involving the failure to timely publish audits and commence collections from employers, which in turn caused the Plans to be under funded and also caused members to fail to receive all of the benefits to which they were entitled. Prior to Mr. Minevich's letter report to Ms. Withers, the fiduciary defendants failed to stop (and thus allowed to continue) the known auditing problems which were causing the Plans to be under funded and also were causing the members of the Plans not to receive the full benefits to which they were entitled.

35. By engaging in the acts, and knowing failures to act, as described above, defendants Gordon, Withers and Friesen have breached their fiduciary obligations under section 404(a)(1) of

ERISA, 29 U.S.C. §§ 1104(a)(1), to discharge their duties with respect to the Plans "solely in the interest" of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and beneficiaries of the Plans.

36. The purposeful actions and failures to act of the fiduciary defendants created conflicts of interest between them and the Plans' beneficiaries. The fiduciary defendants violated their duty to discharge responsibilities in accordance with Plans' documents pursuant to ERISA § 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D) and also failed to exercise the care of an ordinarily prudent person in violation of ERISA §404(a)(1)(B); 29 U.S.C. § 1104 (a)(1)(B).

37. As a participant and beneficiary of ERISA-governed Plans until the time he was wrongfully discharged by defendants, Mr. Minevich is entitled to appropriate relief under Section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3), to redress the violations of ERISA Section 404, 29 U.S.C. §1104, and to relief under Section 502(a)(2) of ERISA, 29 U.S.C. § 1132 (a)(2), to redress violations of section 404 and 409 of ERISA, 29 U.S.C. § 1109, to make good to the Plans any losses resulting from each breach of fiduciary duty.

38. Mr. Minevich has exhausted his administrative remedies by informing the defendant fiduciaries in writing of the auditing improprieties and the detrimental effects and consequences thereof to the Plans. Mr. Minevich's exhaustion of his administrative remedies, moreover, was futile because his employment with the Plans was terminated shortly after he notified the Plans' fiduciaries of the auditing improprieties.

## PRAYER FOR RELIEF

Wherefore, Plaintiff prays for all available relief under ERISA including, but not limited to, equitable relief such as reinstatement, back pay, lost benefits, disgorgement of any ill-gotten gains,

injunctive relief and reformation of the Plans to correct the auditing improprieties and the damages to the Plans resulting therefrom, other equitable relief to bring defendants' policies and procedures in compliance with ERISA, civil penalties against the fiduciary defendants, attorneys' fees and any other relief that the Court may find appropriate.

Dated: July 29, 2008
      New York, New York

GISKAN SOLOTAROFF ANDERSON
& STEWART LLP

*/s/ Catherine E. Anderson*

Jason L. Solotaroff (JS 5739)
Catherine E. Anderson, Esq. (CA 5129)
11 Broadway, Suite 2150
New York, NY 10004
Tel: (212) 847-8315
Email: jsolotaroff@gslawny.com
       canderson@gslawny.com

Counsel for Plaintiff Boris Minevich

11